291 So.2d 699 (1974)
William A. TALBOT
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 47336.
Supreme Court of Mississippi.
January 28, 1974.
Rehearing Denied April 8, 1974.
*700 Bowling, Coleman & Cothren, Jackson, for appellant.
Wise, Carter, Child, Steen & Caraway, Jackson, for appellee.
GILLESPIE, Chief Justice:
William A. Talbot (Insured) sued State Farm Mutual Automobile Insurance Company (State Farm) in the Circuit Court of Coahoma County to recover for personal injuries sustained when he was injured by an uninsured motorist. From a judgment construing the uninsured motorist coverage provisions of State Farm's policy adverse to Insured, the latter appealed. State Farm cross-appealed on grounds hereinafter stated. This case was tried upon a stipulation of facts.
Insured was involved in an automobile accident wherein the automobile owned and operated by Insured was struck by an automobile owned and operated by one Robert L. Johnson, an uninsured motorist. Insured sustained damages for bodily injuries in the sum of $9,800, including $652.72 medical expenses, for which the uninsured motorist was legally liable. At the time of the accident, Insured was the owner of an automobile policy issued by State Farm covering a fleet of four automobiles. The coverage of the policy included bodily injury liability, property damage liability, medical payments and uninsured motorist coverage. The total premium for all of the various coverages varies in amount for each vehicle, and the record does not show what part of the several premiums constitutes the premium for the uninsured motorist coverage.
The policy contains conditions applying to Insuring Agreement III, the uninsured motorist coverage, one of which is as follows:
13. Limits of Liability. (a) The company's limit of liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person in any one accident shall not exceed the amount specified by the financial responsibility law of the state in which this policy is issued for bodily injury to one person in any one accident. Subject to this provision, the company's limit of liability for all such damages arising out of bodily injury sustained by two or more persons in any one accident shall not exceed the amount *701 specified by such financial responsibility law for bodily injury to two or more persons in any one accident.

ON DIRECT APPEAL
The amount of coverage under the financial responsibility law in force at the time of the accident involved in this case was $5,000. Insured contends that the total available coverage provided for his injuries for which an uninsured motorist is liable is $20,000, or the aggregate of $5,000 on each of the four vehicles owned by him and insured by the policy. He argues that he should recover under the uninsured motorist coverage his full damages of $9,800. The trial court rendered judgment for the Insured for $5,000 on the uninsured motorist coverage and $652.72 on the medical coverage.
The question on direct appeal is whether the Insured, under the uninsured motorist coverage of his policy, is entitled to the benefit of the aggregate amount of coverage provided in a single insurance policy insuring more than one vehicle.
The case is one of first impression. The authorities from other jurisdictions are in conflict. The leading cases from other jurisdictions relied upon by Insured are Employers Liability Assurance Corp., Ltd. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972); Sturdy v. Allied Mutual Insurance Company, 203 Kan. 783, 457 P.2d 34 (1969), and Cunningham v. Insurance Company of North America, 213 Va. 72, 189 S.E.2d 832 (1972). The leading cases from other jurisdictions relied upon by State Farm are Allstate Insurance Company v. Shmitka, 12 Cal. App.3d 59, 90 Cal. Rptr. 399 (1970); Morrison Assurance Company v. Polak, 230 So.2d 6 (Fla. 1969); Arminski v. United States Fidelity & Guaranty Company, 23 Mich. App. 352, 178 N.W.2d 497 (1970); and Castle v. United Pacific Insurance Group, 252 Or. 44, 448 P.2d 357 (1968). We have carefully studied these cases relied upon by the respective parties, and in our opinion those holding according to State Farm's contention are more nearly factually in point and contain the better reasoning. It would serve no purpose to discuss these two lines of cases.
The question before the Court has several points of inquiry.

1. Is the "Limits of Liability" provision in State Farm's policy void as being in conflict with the statute?
The statute requires the uninsured motorist coverage "to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury... . from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law... ." Miss. Code Ann. § 83-11-101 (1972). There is no requirement that the coverage shall be more than the minimum thus stated. As to any policy which grants the coverage required by the aforesaid Act, any "excess or additional coverage shall not be subject to the provisions of this article." Miss. Code Ann. § 83-11-111 (1972). The coverage Insured contends for in this case is excess or additional to that required by the statute and by the express terms of the statute is not subject to its provisions. It follows that the parties to this suit were free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions. See Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456 (Miss. 1971). If State Farm and Insured could contract free of statutory restraint as to excess coverage, they could also contract to limit the coverage to that required by statute. They did this by the "Limits of Liability" provision. Thus the limitation clause is consistent with the statute.

*702 2. Is the "Limits of Liability" provision in State Farm's policy ambiguous and therefore unenforceable?
The opinions in Sturdy v. Allied Mutual Insurance Co., supra, and Employers Liability Assurance Corp., Ltd. v. Jackson, supra, wherein a similar clause was held to be ambiguous, reveal that there is considerable difference between the language of the clauses involved in those cases and the one involved in the case now before this Court. In our opinion, Paragraph 13 limiting the liability to "the amount specified by the financial responsibility law of the state" is as clear as language can make it. As stated in Morrison Assurance Co. v. Polak, supra, if greater coverage is afforded in the face of this language, it would require a judicial redraft of the insurance contract.
We hold that the limitation clause involved in this case is clear and unambiguous.

3. Does the holding of this Court in Harthcock v. State Farm Mutual Automobile Insurance Co., supra, require a reversal of the trial court?
Insured relies to a considerable extent on the Harthcock case. In that case there were two policies issued to different people, and the question of the application of the "Limits Of Liability" clause was not involved. One of the important questions decided in Harthcock was whether the "Other Insurance" clause of State Farm's policy relieved the insurer from liability. The Court held that the mandatory coverage required by the statute could not be cut down or diminished by the "Other Insurance" clause. The fact that the "Other Insurance" clause is invalid is no authority for the proposition that the "Limits of Liability" clause is invalid. Morrison Assurance Co. v. Polak, supra.

4. Does the fact that separate premiums were paid on the four automobiles affect the question of coverage?
The question of premium payment apparently played some part in the decisions in Employers Liability Insurance Co. v. Jackson, supra, Sturdy v. Allied Mutual Insurance Co., and Cunningham v. Insurance Company of North America, supra, relied upon by Insured. The record in the present case does not show how much premium was paid for the uninsured motorist coverage, although no doubt some premium was paid. The premiums for the four vehicles are for different lump sums. We are of the opinion that the question of premiums has no proper place in determining whether Insured has aggregate coverage under the uninsured motorist provisions of the policy.
The named policyholder and members of his household are protected if injured by an uninsured motor vehicle regardless of where the injury took place. The other coverage provided is for all persons occupying one of the insured vehicles with Insured's permission when so injured by an uninsured motorist. Insured argues that if he is not allowed aggregate coverage on the several vehicles any premium paid on three of the vehicles would afford no protection. But any person using any of the vehicles with Insured's permission is afforded coverage, so it cannot be successfully argued that no coverage was provided for the premiums paid.

ON CROSS-APPEAL
On cross-appeal State Farm contends that the $652.72 paid out by State Farm under the medical coverage of its policy ought to be deducted from the uninsured motorist liability. This question is also one of first impression in this jurisdiction.
*703 State Farm's claim is based upon the following provision under "Conditions  Insuring Agreement III, Uninsured Motorist Coverage:
13. LIMITS OF LIABILITY.
......
(b) Any amount payable under this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:
......
(3) all sums paid or payable on account of such bodily injury under Coverages C and M of a policy issued by the Company... .
We hold that the attempt of State Farm to limit its liability under the uninsured motorist coverage by the amount paid under the medical coverage is in conflict with the statutory requirements concerning uninsured motorist coverage. Under the authority of Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456 (Miss. 1971), this attempt to cut down on the coverage the statute requires is not permissible. In Harthcock the Court held that the "Other Insurance" clause was an attempt to cut down or diminish the coverage required by the statute. For the same reason, the attempt to reduce the uninsured motorist coverage by the sums paid under the medical coverage is void.
For the reasons stated, the case is affirmed on direct and cross-appeals.
Affirmed.
SMITH, ROBERTSON, SUGG and WALKER, JJ., concur.
BROOM, J., RODGERS, P.J., and PATTERSON and INZER, JJ., dissent.
BROOM, Justice (dissenting as to direct appeal):
I must in all deference dissent because in my opinion the majority has not correctly interpreted the policy before us with due regard to prior decisions of the Court and pertinent statutes. The statutes are Mississippi Code Annotated section 83-11-101 (1972), which requires uninsured motorist provisions in automobile liability insurance policies, and section 83-11-103 (1972).
In construing the policy before us, we should be mindful of the legislative intent expressed in Code sections 83-11-101 and 83-11-103, supra. In earlier cases this Court has dealt with legislative intent. Harthcock v. State Farm Mut. Auto. Ins. Co., 248 So.2d 456 (Miss. 1971); and Hodges v. Canal Ins. Co., 223 So.2d 630 (Miss. 1969). Harthcock and Hodges, among other things, hold: (1) The purpose of uninsured motorist protection is to provide the insured the means of collecting that to which he is legally entitled for bodily injuries; (2) the means of affording such protection is the policy itself, which must be so written as to accomplish the purpose of the statute; and (3) uninsured motorist coverage is to be construed from the perspective of the injured insured. Further, as stated in Rampy v. State Farm Mutual Insurance Company, 278 So.2d 428 (Miss. 1973), provisions set forth in uninsured motorist policies are to be liberally construed in order to accomplish the purpose for which such insurance is required by statute.
The majority holds that the "limits of liability" provision in the policy before us does not conflict with the statute, i.e., section 83-11-101, supra. In my opinion this is neither sound logic nor in line with the rationale expressed in Harthcock and Hodges, supra. In Harthcock it was held that Mrs. Harthcock was entitled to collect all of her damages under all of the uninsured motorist coverages available. She was allowed to collect all of her damages from all coverages available because the court held void "the other insurance" clause in the policy. The court said in that decision, "the other insurance" clause is a condition designed to limit coverage. *704 The decision of this Court in Harthcock further states:
[T]hat the uninsured motorists coverage of each policy of liability insurance is available to the injured insured until all sums which he shall be entitled to recover from the uninsured motorist have been recovered. The coverage is mandatory on the insurer and this undertaking cannot be diminished by a provision in the policy. We find no words in the statute indicating that one policy providing minimum coverage is all the statute requires. The statute requiring the coverage does not say how much uninsured motorists coverage shall be provided for each accident or each vehicle or each uninsured motorist. It requires each policy to provide the minimum coverage... . (248 So.2d at 461-462).
Section 83-11-101, supra, requires each policy to provide minimum coverage, but does not say that there is any limitation of coverage which may be provided by a policy for each accident or each vehicle or each insured. Talbot purchased from State Farm in the present case a policy providing uninsured motorist coverages (plural) on four passenger vehicles. To limit or restrict these coverages, as urged here by State Farm pursuant to its policy under Item "13. Limits of Liability" would operate in derogation of the statute XX-XX-XXX, supra. The court said in Harthcock:
The insurer may not cut down on the coverage the statute requires. The statute intends to provide a source for the collection by the insured of all sums which he shall be legally entitled to recover as damages against the owner or operator of an uninsured motor vehicle. The coverage afforded by these policies is mandatory under the statute and may not be cut down by a policy exclusion... . (248 So.2d at 459).
Applying the rationale of Harthcock and Hodges, supra, to the present case, State Farm should not be permitted to limit or restrict the coverages which are separate coverages within his policy and for which he paid separate and distinct premiums. More recently in the well reasoned case of Lowery v. State Farm Mutual Insurance Company, 285 So.2d 767 (Miss. 1973), the court held void a provision of an automobile policy which purported to exclude uninsured motorist coverage for injuries sustained by the son of the named insured when he was struck by an uninsured motorist while riding a motorcycle owned by him but not listed on the declaration page of the policy.
Before us is a policy which clearly provides, as per the endorsement, uninsured motorist coverages on not just one but on four passenger vehicles. The insured thus purchased not just the minimum coverage required by the pertinent Code sections, supra, he purchased the minimum in quadruplicate. Limitation of those coverages, as is done by the majority, by the policy restriction is in derogation of the purpose of the statute. To allow recovery as sought by Talbot would be in furtherance of the purpose of the statute which, as the court said in Harthcock, is to make available to the injured insured coverage "until all sums" (emphasis added) have been recovered. In view of the decisions (voiding certain clauses in policies) of the court in Harthcock, Hodges and Lowery, supra, it seems to be a step backward to say that it would require a judicial redraft of the insurance contract to hold in favor of Talbot here.
The second aspect of the opinion of the majority herein is to the effect that the "limits of liability" provisions in the policy are clear and unambiguous. Apparently the majority opinion agrees that if the clause in question is ambiguous and unclear, it would be construed in favor of the insured, Talbot. The general rule requires that ambiguities and doubts be resolved against the company and in favor of the insured. State Farm Mut. Ins. Co. v. Taylor, 233 So.2d 805 (Miss. 1970). Here it is pertinent to note that Talbot's contract issued *705 by State Farm lists four passenger vehicles as being provided uninsured motorist coverage. The schedule of coverages indicates a separate premium (not just one premium) was paid on each vehicle for the uninsured motorist coverage. The words "coverages in force" appear on the contract in the column delineating coverages. Thus, there is plural coverage before us. It clearly appears on the contract that a separate premium for uninsured motorist coverage was paid on each insured vehicle and the letter "U" appears beside each insured vehicle under the column "Coverages in Force."
If the "Limits of Liability" clause relied upon in this policy by State Farm is construed in bare and naked isolation, it may appear to be clear and unambiguous, but it is well settled and established throughout all the jurisdictions in this country that a policy or contract should be construed in its entirety. Consideration should be given to every word within its four corners pertaining to the indemnification sought by Talbot. Having put into the instrument before us that part providing uninsured motorist "coverages" (plural) in the schedule delineating such benefits, State Farm should not be permitted to withhold from Talbot indemnification for which he paid, that is, plural coverages consisting of that related to the vehicle in which he was riding plus the other coverage within the purview of the "or otherwise" status pursuant to Code section 83-11-103, supra. The majority decision herein is based upon the unsound premise to the effect that payment of separate premiums as to the four automobiles has no effect on the question of coverage here.
It seems most incongruous to permit State Farm to avoid its statutory liability by simply inserting into the policy an ambiguous limiting clause precluding the insured from receiving that coverage for which he paid the premium charged. Since a premium has been paid for each of the endorsements and coverage has been issued, it is reasonable and equitable to allow Talbot to recover under more than one endorsement to the extent of his damages. Such a result does not allow the insured to "obtain a windfall." He contracted and paid for the "coverages." This was the ruling of other courts of other jurisdictions in the following cases in point: Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970); Sturdy v. Allied Mut. Ins. Co., 203 Kan. 783, 457 P.2d 34 (1969); Cunningham v. Insurance Co. of North America, 213 Va. 72, 189 S.E.2d 832 (1972); Lipscombe v. Security Ins. Co. of Hartford, 213 Va. 81, 189 S.E.2d 320 (1972). As said in Sturdy, where one pays a double premium, double coverage is expected. Here Talbot paid for multiple coverages and should be allowed to collect accordingly, up to the amount of his actual loss.
It is pointed out that the indemnification sought by Talbot is not tied to any particular automobile. Section 83-11-103, supra, defines the word "insured" as to include the insured, et cetera, "while in a motor vehicle or otherwise." (Emphasis added). Such insured is protected while occupying an insured vehicle or otherwise. The "otherwise" status may be such as where the named insured is a pedestrian, on a horse, or engaged in any other non-vehicular activity. We previously held the status also to include the situation where the minor son of the named insured was injured while riding and operating a motor bike owned by the minor son. Lowery v. State Farm, supra. On the other hand, an insured, who is not the named insured or a relative, is protected only while occupying an insured vehicle. Cunningham v. Insurance Co. of North America, supra. As said in that case, the named insured has available a "broad reservoir" of coverage.
In the present situation emphasis should be placed upon the status of an insured when injured, rather than upon vehicles in determining whether coverage applies. True it is that the uninsured motorist coverage on the 1968 Ford automobile which Talbot was driving at the time of the accident *706 must be exhausted first. Then Talbot is entitled to aggregate or stack coverage applicable to each of his other vehicles under which, at the time of his injury, he was in the "or otherwise" status, up to the total amount of such coverage but not in excess of his damages. As to the coverages on his other vehicles not being driven or occupied by him at the time of the accident, for which he paid a premium, he is insured while "in a motor vehicle, or otherwise" status. More specifically, here he was in the "or otherwise" status as to his three covered automobiles not being driven or occupied by him.
From the vantage point of Talbot, pursuant to our holding in Harthcock, supra, one construing the coverages provided in the policy should ask what coverages would Talbot have reason to believe he had under his policy when looking at the schedule of coverages attached to the declaration. It is arguable with logic that Talbot would believe he had four uninsured motorist coverages. If so, he would be entitled to indemnification under all of them, not just under the coverage related to the vehicle occupied by him when injured. Such indemnification would be limited to his actual damages. If his actual damages exceeded the amount of coverage related to the occupied vehicle, then the remainder of the indemnification would be drawn from the other three uninsured motorist coverages held by Talbot. Indemnification under each coverage would, of course, be limited to the specified limits afforded in each coverage. From the standpoint of State Farm, an opposite construction may be argued. Clearly an ambiguity exists in the policy, and we should construe the ambiguity most strongly against State Farm, who prepared it. State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So.2d 805 (Miss. 1970).
In order to prevent liability, State Farm should have supplied language within its policy making it plain, unmistakable and certain that "stacking" is not allowable under the policy. Lipscombe v. Security Ins. Co. of Hartford, 213 Va. 81, 189 S.E.2d 320 (1972). State Farm failed to use such language and therefore "stacking" should be allowable under the policy upon the facts and circumstances of this case.
For the foregoing reasons, I reach a different conclusion from that of the majority. I would accordingly reverse as to the direct appeal of Talbot.
It is ironic here that State Farm should be favorably heard to argue that the insured Talbot should not be permitted to stack coverage. This seems hardly fair and at the best it is inconsistent to deny Talbot the right to stack coverage even though the insurer, State Farm, was obviously permitted to stack premiums which it charged. Having stacked the premiums which he paid, is it not logical that Talbot reasonably concluded that he would be permitted to stack coverage and accordingly receive the indemnification for which he bought and paid?
It is fair to say that since the endorsement indicates more than one coverage, such language was and is calculated to mislead Talbot or any insured in like position. Noteworthy is the fact that the first page of the policy contains a printed item, to-wit: "Coverages as defined in policy," beneath which is typed in much larger capitalized lettering the words "SEE FLEET SCHEDULE." The fleet schedule attached to the policy indicating separate uninsured motorists coverage opposite each of the four motor vehicles is also typed in large bold print. Such inserted bold typing stands out so as to easily catch the eye of an insured. On the other hand, the "Limits of Liability" clause appears on the sixth (6th) page of the policy in comparatively small lettering as part of the printed form used by State Farm. This clause as situated, appearing in small print, was obscure when compared to the bold typewritten reference on the front of the policy indicating that the policy had attached a "FLEET SCHEDULE." Obscurity of the "Limits of Liability" clause is accentuated when *707 one looks at the fleet schedule and finds indication by large bold typewritten letters that there are uninsurd motorists "Coverages in Force" as to each of the four (4) motor vehicles.
This case is strikingly similar to Employers Liability Assurance Corporation, Ltd. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972). In that case there was before the Supreme Court of Alabama a policy provision containing a "Limits of Liability" clause relied on by the insurance carrier. A statute similar to ours was applicable. The "Limits of Liability" clause was not unlike the one relied on by State Farm in the case at bar and the facts were, for all practical purposes, identical to the case at bar. Employers, supra, held that the insureds were entitled to their full damages under all available coverages for which a premium had been paid. Stacking was allowed in Employers just as is sought here by Talbot. The Alabama Supreme Court refused to apply the "Limits of Liability" clause so as to deprive the insured of benefits for which a premium was paid. Well reasoned decisions on similar facts appear in the following cases: Safeco Ins. Co. of America v. Jones, supra; Sturdy v. Allied Mut. Ins. Co., supra; Cunningham v. Insurance Co. of North America, supra; Lipscombe v. Security Ins. Co. of Hartford, supra.
These expressions are based upon a careful study of the cases and authorities cited in the excellent briefs of the parties in the case at bar. Fairness, logic, and appropriate consideration to earlier decisions rendered by this Court and reference to pertinent statutes constrain me to suggest that the ruling in this case should be as follows: (1) The insured before us is entitled to his full damages under all coverages for which a premium has been paid; (2) the "Limits of Liability" clause will not be permitted to operate in such a fashion as to deprive the insured of benefits for which a premium was paid; (3) the "Limits of Liability" clause is so worded as to be susceptible of differing and contradictory meanings and is legally ambiguous, and is therefore to be construed most strongly against its creator, State Farm. Accordingly, I would reverse as to the direct appeal of Talbot. I concur with the majority as to the cross-appeal.
RODGERS, P.J., and PATTERSON and INZER, JJ., join in this dissent.